## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **PROGRESSIVE HEALTHCARE** | * | |
| **PROVIDERS/LOUISIANA., INC.** | * | **CIVIL ACTION NO. _____** |
| | * | |
| **Plaintiff** | * | **SECTION:** |
| | * | |
| | * | **JUDGE** |
| **VERSUS** | * | |
| | * | **MAGISTRATE** |
| | * | |
| **CITY OF KENNER, LOUISIANA** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

### PLAINTIFF'S VERIFIED COMPLAINT

Plaintiff, Progressive Healthcare Providers/Louisiana, Inc. files this Complaint against the defendant, the City of Kenner, Louisiana and alleges as follows:

### I.
### THE PARTIES

1.

Plaintiff, Progressive Healthcare Providers/Louisiana, Inc. ("PHP" or "Plaintiff") is a Louisiana corporation, with its principal office and place of business located in Louisiana.

2.

Defendant, the City of Kenner, Louisiana ("Defendant" or "the City"), is  a municipal corporation organized and existing pursuant to the laws of the State of Louisiana and may be served through its registered agent, Mayor Michael S. Yenni, 1801 Williams Boulevard, Kenner, LA 70062.

3.

Defendant, acting through its Mayor, City Council, executive agencies, and boards, exercises zoning, land use, and permitting authority over land within its boundaries. Defendant's municipal ordinances contain Defendant's zoning, land use, and permitting regulations.

4.

In addition to bringing this action in its own right to recover damages and injunctive relief for the injury suffered by the conduct of the City, PHP brings this action pursuant to 42 U.S.C. § 3613 as a private attorney general to vindicate the fair housing rights of others who are aggrieved by the City's actions and to vindicate the fair housing policy that the United States' Congress considered to be of the highest priority.

**II.**
**JURISDICTION AND VENUE**

5.

This action is brought by PHP to enforce the provisions of the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.* ("FHA").

6.

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 3613.

7.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**III.**

**THE FACTS**

8.

On or about April 12, 2012, PHP signed an agreement to purchase a home located at 10 Sabine Court in Kenner, Louisiana, with a legal description of Woodlake South Subdivision, Lot 6, Square 4 (the "Proposed Home").  PHP intended to use the Proposed Home to provide a residence and support for up to eight developmentally disabled adults (none of whom have criminal records).  The Proposed Home would be staffed by one to two PHP employees depending on the time of day, with a manager also visiting regularly.

9.

The Proposed Home is located in an area which the City has zoned R-1 (Single Family). Under the City's ordinances, the only permitted use in an area zoned R-1 is for single family residences.

10.

In order to make the Proposed Home better suited to its purpose as a group home and to comply with nondiscriminatory laws and regulations governing same, PHP sought to make certain improvements to the Proposed Home.  Therefore, PHP authorized its building contractor, Renovate, Inc., to act on its behalf in preparing planning for such improvements, obtaining all necessary permits for the work, and ultimately performing the work required to implement the plans.

11.

After preparing the plans detailing the work to be formed, PHP submitted an application for a building permit with the City's Planning Department on or about December 12, 2012.

3

However, the personnel at the City's Planning Department informed PHP's building contractor that the City's Code of Ordinances provides for an application process specifically governing group homes and community homes, and that the City Council must approve an application to operate a group home before the application for the building permit could be approved or even acted upon.

12.

PHP's building contractor followed up with the City's Department of Inspection & Code Enforcement on or about December 19, 2012, and was again informed that the City would hold the request for the building permit without acting on it on the basis that PHP had not applied for or obtained a group home permit from the City.  No other basis for City's refusal to process and/or grant the permit has been communicated.  PHP's building contractor requested a written explanation for the City's refusal to grant or even act upon the building permit application, but the City declined to provide one.  The City did provide PHP's building contractor with a copy of the City's Code of Ordinances, Chapter 10, Article VII – Group Homes and Community Homes.

13.

In the absence of the requested building permit being granted, PHP cannot lawfully proceed with making the needed improvements to the Proposed Home or have PHP's clients, developmentally disabled individuals who need that home, take up residence therein.

14.

In the normal course, a request for a similar building permit in Kenner, Louisiana, is acted upon within two - five business days.  As of the date of this filing, however, the City still has not taken any action on PHP's request for a building permit despite the request being submitted for approval some six weeks ago.

15.

As its title indicates, Chapter 10, Article VII of the City's Code of Ordinances is devoted entirely to "Group Homes and Community Homes."  A copy of Chapter 10, Article VII of the City's Code of Ordinances is attached hereto and made part of this Complaint as Exhibit A.  The entirety of Article VII remains in full force and effect.

16.

Section 10-159 of the City's Code of Ordinance defines "community home" and "group home" to mean "a facility certified, licensed or monitored by the department of health and human resources to provide resident services and supervision to . . . handicapped persons." Under the ordinance, a "community home" houses "more than four (4), but fewer than seven (7) handicapped persons" with supervisory personnel "not to exceed two (2) live in persons."  A "group home" houses "between seven (7) and fifteen (15) handicapped persons," with supervisory personnel "not to exceed five (5) live in persons."

17.

Pursuant to Section 10-160 of the City's Code of Ordinances, all community homes or group homes must first obtain an annual license to operate with the City. *See also* Sec. 168 (annual renewal of license).  The application must, *inter alia*, be noticed for a public hearing before the planning commission and be approved by a vote of the City Council, which can take up to 45 days following the hearing. Sec. 10-161. Furthermore, the City's planning commission is required to issue a recommendation as to whether the application complies with the "criteria outlined in section 10-163."

18.

Section 10-163(a) of the City's Code of Ordinances provides that "[c]ommunity homes and group homes shall be permitted in the R-2 (Two-Family), RR-3 (Three-and Four-Family) and R-3 (Multi-Family) Residential Districts only."  Thus, the City's Code of Ordinances flatly prohibits community and/or group homes in any area zoned R-1 (Single Family).

19.

The City's Code of Ordinances provides no provision for a variance or waiver of the requirements for group homes and community homes.  Instead, Section 10-162 makes clear that "[n]o license for the operation of a community home or group home shall be issued unless the provisions of this article are strictly complied with . . . ."

20.

In view of Sections 10-159 through 10-163, it would be futile for PHP to apply for a variance or waiver of the Code of Ordinances' Article VII requirements.

21.

Any person in violation of Article VII governing group homes and community homes is subject to a misdemeanor conviction, fines not less than $200, and/or up to 30 days in jail. *See* Sec. 10-169.

22.

On November 7, 2012, PHP, through the undersigned counsel, formally notified the City that its ordinances were in violation of federal law "*at least* insofar as they purport to prevent a group home from locating in areas zoned R-1/single-family." Following cordial but unsuccessful attempts to resolve the matter through informal discussion, PHP reiterated its formal notification

of the conflict between the City's group and community home ordinances and federal law by letter dated January 22, 2013.

23.

As explained in both letters referenced in the preceding paragraph, the City's group and community home ordinances were adopted in 1987, a year prior to the controlling amendments of the Fair Housing Act, which were enacted in 1988.

24.

Given the passage of time since PHP first notified the City of the Planning Department's refusal to process PHP's application for a building permit – a refusal based solely on the group/community home ordinances – it has become critical for PHP to move quickly so that its developmentally disabled clients are no longer deprived of the decent home in which they would otherwise be living. For these reasons and as explained more fully in the Motion for Preliminary Injunction filed contemporaneously with this Complaint, PHP is entitled to preliminary injunctive relief requiring the City to process PHP's request for a building permit in an expeditious manner and enjoining the City from denying said application on the basis of the City's group/community home ordinances.

## IV.
## CAUSES OF ACTION

### Count I:  The City's Group and Community Homes
### Ordinances Are Discriminatory on Their Face and As Applied.

25.

The foregoing paragraphs are hereby incorporated by reference into this paragraph of the Complaint.

26.

The Proposed Home is a dwelling within the meaning of 42 U.S.C. § 3602(b).

27.

The intended residents of the Proposed Home are persons with developmental disabilities and, as such, are persons with a handicap within the meaning of 42 U.S.C. § 3602(h).

28.

PHP is an "aggrieved person" as defined in 42 U.S.C. § 3602(i) and has suffered damages as a result of the City's discriminatory conduct.

29.

The City's Code of Ordinances specifically defines both community homes and group homes as facilities "certified, licensed or monitored by the department of health and human resources to provide resident services and supervision to . . . *handicapped* persons." (Emphasis added).

30.

The persons who are intended to reside in housing that the City classifies as a "group home" or "community home" include persons with handicaps within the meaning of 42 U.S.C. § 3602(h).

31.

Housing for persons with handicaps that the City classifies as "group home" or "community home" are dwellings within the meaning of 42 U.S.C. § 3602(b).

32.

As detailed in the preceding paragraphs, the City's ordinances place special conditions on, and in areas zoned R-1 (Single Family), flatly prohibit housing for persons with handicaps

defined as "community homes" or "group homes," which are not imposed upon housing for persons without handicaps.

33.

The City's group and community home ordinances include classifications based on handicapped status, and on their face and as applied, such ordinances violate the Fair Housing Act by making housing unavailable on the basis of handicap in violation of 42 U.S.C.§ 3604(f)(1), and by imposing different terms, conditions, or privileges of housing on the basis of handicap status in violation of 42 U.S.C.§ 3604(f)(2).

**Count II:  The City's Discrimination Against PHP on the Basis of Handicap**

34.

The foregoing paragraphs are hereby incorporated by reference into this paragraph of the Complaint.

35.

The City's conduct of not acting upon, refusing, and/or delaying the issuance of the building permit for the Proposed Home, imposing conditions on PHP to apply for a permit to operate the Proposed Home which cannot be granted under the express terms of the Code of Ordinances, and failing to consider or even allow for the possibility of a reasonable accommodation with regard to an application to operate the Proposed Home in areas zoned R-1 (Single Family), prevent PHP from establishing and operating housing for persons with handicaps at the 10 Sabine Court location.

36.

The City's above-described conduct was taken on the basis of the handicapped status of the prospective residents of the Proposed Home in violation of 42 U.S.C. §§3604(f)(1).

37.

The City's above-described conduct has interfered with PHP's exercise or enjoyment of rights protected by 42 U.S.C. § 3601, *et seq.* and violated 42 U.S.C. § 3617.

38.

In addition to the City's group home and community home ordinances violating the Fair Housing Act on their fact, the City's above-described conduct also constitutes a refusal to make or even allow for reasonable accommodation in its rules, policies, and practices, which may be necessary to afford PHP and the proposed residents of the Proposed Home equal opportunity to use and enjoy the Proposed Home in violation of 42 U.S.C. §3604(f)(3)(8).

WHEREFORE, PHP prays that the Court enter a temporary restraining order, preliminary injunction and ultimately a final judgment and order in favor of PHP and against the City that:

1.  Declares that the actions of the City described above constitute a violation of the Fair Housing Act, as amended, 42 U.S.C. § 3601;

2.  Declares that the City's ordinances governing Group Homes and Community Homes, described above, are invalid as they impose stricter requirements on housing for persons with handicaps than the requirements imposed on housing for persons without handicaps and flatly prohibit the operation of a group home or community home in any area zoned R-1 (Single Family), in violation of the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.*;

3.  Enjoins the City, its departments, commissions, boards, councils, agents, employees, assigns and all other persons in active concert or participation with it, from violating any provision of the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq*.;

4.  Enjoins the City, its departments, commissions, boards, councils, agents, employees, assigns and all other persons in active concert or participation with it, from enforcing any provision of the City's ordinances that impose stricter requirements on persons with handicaps than the requirements imposed on housing for persons without handicaps in violation of the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq*.;

5.  Requires the City to grant PHP all necessary permits, including building permits, or other permissions required to operate the Proposed Home at 10 Sabine Court in Kenner, Louisiana, with a legal description of Woodlake South Subdivision, Lot 6, Square 4, and enjoins the City, its departments, commissions, boards, councils, agents, employees, assigns and all other persons in active concert or participation with it, from denying and/or refusing to act on any request for a permit on the basis of the City's ordinances governing Group Homes and Community Homes, or otherwise interfering with PHP's operation of the Proposed Home;

6.  Requires the City to take such affirmative steps as may be necessary to eliminate the effects of the City's unlawful practices described herein and put PHP in the position it would have occupied but for the City's discriminatory conduct pursuant to 42 U.S.C. §3613(c)(1);

7.  Awards such damages as would fully compensate PHP pursuant to 42 U.S.C. § 3613(c)(1); and

8. Awards PHP its reasonable attorneys' fees and costs pursuant to 42 U.S.C. §3613(c)(2).

PHP further prays for such additional relief as the interests of justice may require, including preliminary and permanent relief, after due proceedings are had.

New Orleans, Louisiana, this 4th day of February, 2013.

Respectfully submitted,

CARVER, DARDEN, KORETZKY, TESSIER,
FINN, BLOSSMAN & AREAUX

_____
I. HAROLD KORETZKY (#7842)
RUSSELL L. FOSTER, T.A. (#26643)
1100 Poydras Street, Suite 3100
New Orleans, Louisiana  70163-3100
Telephone:  (504) 585-3837

ATTORNEYS FOR PLAINTIFF, PROGRESSIVE
HEALTHCARE PROVIDERS/LOUISIANA, INC.

VERIFICATION

STATE OF ~~LOUISIANA~~ *Tennessee* )
*County* )
~~PARISH~~ OF _Shelby_ )

The undersigned, being duly sworn, deposes and says:

Deponent Wayne Addison is the Chief Operating Officer of plaintiff in this matter. Deponent has read the Complaint and knows the contents thereof; that same is true to deponent's knowledge except as to matters therein stated to be alleged upon information and belief and that to such matters deponent believes them to be true.

_____
WAYNE ADDISON

Sworn to before me, this _30_ day of
_January_, 2013

_____
NOTARY PUBLIC

**My Commission Expires:
April 3, 2013**

MARY BACCA
STATE
OF
TENNESSEE
NOTARY
PUBLIC
SHELBY COUNTY

13

VERIFICATION

STATE OF LOUISIANA              )
                                )
PARISH OF JEFFERSON             )

The undersigned, being duly sworn, deposes and says:

Deponent Nick Castjohn is the president of Renovate, Inc., Plaintiff PHP's building contractor as referred to in the Complaint.  Deponent has read the Complaint and knows the contents thereof; that same is true to deponent's knowledge except as to matters therein stated to be alleged upon information and belief and that to such matters deponent believes them to be true.

_____
                        NICK CASTJOHN

Sworn to before me, this ___1st___ day of
February, 2013

_____
            NOTARY PUBLIC

4818-0793-5762, v. 1          **T. ROBERT LACOUR**
                         Attorney & Notary Public  #8077
                         3220 Williams Boulevard, Kenner
                         Jefferson Parish, Louisiana
                         My Commission is issued for life

14